Ready to hear argument in Birmingham v. PNC Bank. Mr. Burns, whenever you're ready. Thank you, Your Honor. Your Honors, I represent Mr. Gregory Birmingham. He's a contractor working outside Washington in an area called Prince George's County, Maryland. He owns a very modest home in Beltsville. Beltsville is an area also right outside of Washington. And he filed Chapter 13 bankruptcy in the spring of 2014. There was a lawsuit filed in the bankruptcy by my office seeking to do something called a lien strip, whereby we file to bring down secure debt on real property. So hypothetically here, or not hypothetically in the record, the property is worth $206,500. The payoff to PNC, the lender was $309,449, which left an unsecured claim of $102,900. So you call it lien strip, not cram down, huh? Both, Your Honor. Both, okay. Both. Cram down is a bit of a misnomer. It arises more in Chapter 11 plans, but people refer to them in both senses in the case law. So there's about $100,000 exposure is the bottom line for the lender if the lien strip is successful. Are there really multiple security interests in this property? Not that the deed of trust just encompassed the mortgage itself. Aren't you trying to create, say that there's more than one security interest? Yes, Your Honor. And there are four issues. The first is miscellaneous proceeds, which is defined at Section M of the deed of trust. Miscellaneous proceeds is any money paid essentially by a third party, such as damages or condemnation proceeds, things of that nature, that would go to the benefit of the debtor. But they're secured in our position under Section 11 of the deed of trust because they're explicitly assigned to the lender. The second, we believe, is insurance proceeds. They at Section 5 of the deed of trust are likewise assigned, and it specifically says they're assigned. And notably, as to both. Does it say they're assigned as additional security interest? It doesn't say additional security interest, but it does say at the bottom of Paragraph 5. Doesn't that make all the difference? It would if at the bottom of Paragraph 5 it didn't say they're to be applied as Paragraph 2, which is for payment in satisfaction of the loan. So the only way that they are assigned under Paragraph 5 is to read the entire paragraph to the bottom, and the same applies to Paragraph 11 at the very bottom where it says those proceeds are to be paid to the lender as essentially under Section 2. But we're talking about a mortgage, and typically in a mortgage there are escrow payments. There may be hazard insurance proceeds if there's a fire or something like that. That's correct. They're all intended to secure the collateral, which is the single house. How is that more than one security? Because it's not real property. As the Fourth Circuit said in its opinion in 2009 in Ennis, in looking at whether a mobile home was subject to the anti-modification provision, Section 1322B-2, the Fourth Circuit recited that there are two provisions that remain viable, notwithstanding the enactment of 10113A and 27B in 2005. Those two little provisions dealt with defining a principal residence, which said, by the way, it doesn't have to be attached to real property, thereby separating those concepts in the words of the statute from real property. Incidental property found at 27B of Section 101 says things that are commonly given in the area where the real property is located, again, separating out these items from the real property. Counsel, that seems different to me. I mean, in Ennis, the question was is there any real property in this picture? Here there's undisputably real property, and I took Julie's questions to be going more to this question of we've got real property. This isn't an Ennis problem. There is real property. We also have these very standard mortgage provisions, and why aren't they just securing the original interest in the real property? Why isn't their function sort of tied back to the real property that we have in this case? I think that is their function, and I think they should be interpreted to secure the benefits of the real property as additional collateral. The problem is they are additional collateral. And if 1322B2 had been modified in 2005 instead of creating a whole new statutory regimen under 10113A and 27B to simply say including but not limited to real property instead of the word only, we wouldn't be having this tortured statutory analysis. So under your view, I mean, is the court below or are all the courts in Maryland wrong about this? I mean, wouldn't that take pretty much every home mortgage out of what is supposed to be a statutory exception for home mortgages? It could. I mean, doesn't the statute become absurd? No, it doesn't. Why not? They can change the statute. No, no, no, but the statute as written would be absurd, and we tend to try to avoid a reading that would render a statute absurd. True, but by the same token, Your Honor, this provision has been in the statute since 1978, and there have been countless decisions going back to Hammond in the Third Circuit and Eskew and a whole bunch of decisions that I've cited that stand for the proposition among Brad, Sher, and Hughes in the District of North Carolina that these items, these what we call small miscellaneous proceed type items are separate from real property.  Not once has the lending institution or the mortgage industry chosen to set aside those provisions. And the reason is rather self-revealing in the decisions that Your Honor see about this, in Inglis, in this case, and some others as well, where on one hand the judges tend to say, well, these are really small enhancements. They're sort of like real property. They're replacements. They're additions. Ignoring the issue of whether they're really defined as real property, as I think my read at least of what Ennis said was that it has to be real property. That was not read out of the code by the amendments in 10113A or 27B. And also by the same token in these decisions saying, well, if these small items were taken out, it would put the lenders in a Hobson's choice. It would put them in a devastating position where they'd waive condemnation proceeds and so forth. Sort of undercutting the argument that they're really real property, which is what the argument seeks to make by these jurists who are issuing those decisions. So here, should the district court have analyzed Maryland law to determine if the deed of trust, they created additional security interest in the escrow funds, insurance proceeds, and things like that? Should the district court have done that? I think they should have, Your Honor. And I think Judge Grimm in this case, Judge Hazel in the ACWA case, and some of the other judges who have reviewed the decisions that have arisen, and there are, of course, ACWA, Abdosh, Donaldson, Zutti. There are quite a few. I've lost quite a few times on this, but bottom line, there should have been an analysis under what real property is under Maryland. But you just said you've lost many times. I have. But under federal law, the North Carolina case, they go two different ways, don't they? There's a North Carolina case that says these escrow funds and things could be an additional security interest in the property. And there's another line that says, is this a Fannie Mae deed of trust? It is a Fannie Mae deed of trust. Then this Fannie Mae deed of trust does not present those problems. Isn't that right? Yes and no, Your Honor. The court, Judge Stockson used and Bradsher said that a FHA loan presented in Section 2 of the deed of trust a specific set of language that said pledged as additional security. That language does not exist in the Fannie Mae deed of trust. What does exist and what was not commented on by Judge Stocks is that at Section 11 of the Fannie Mae deed of trust, it says that the miscellaneous proceeds are assigned to the lender. Now, one can quibble, as I've been told I do, with words between assigned and pledged. I think they're the mirror image of one another. But one cannot take out of the deed of trust two things. The first I mentioned before at the bottom of Section 11, it says it shall be applied as provided for in Section 2, which is how you apply payments, thereby making it security to repay the indebtedness of the obligation. The second, Your Honor, when the court looks at the conveyance paragraph of real property, in the deed of trust it says below, together with a number of items and itemizes also and uses the word also in quotes, replacements or additions. Again, separating these words out. So it's our position, Your Honor, that the cases in this matter go like spider legs all over every particular area of analysis to try to avoid coming to the conclusion or even the discussion that real property is not miscellaneous proceeds, escrow funds, insurance proceeds, or any of those items. Isn't it just as kind of a practical matter, I have this question about the North Carolina approach to kind of fly specking these deeds. It does seem, just as a practical matter, doesn't it seem, what's the right word, kind of counterproductive to adopt a rule where so much is going to turn on the kind of analysis you were just doing about what exact language is used on what page of the deed? Doesn't it make more sense just to kind of step back and say, look, these additional items, they all, their function, they all go to protecting the security interest in what is undisputably real property. And so this is not secured by something that is separate from the real property. I think that would be a great debate for Congress to take up in amending the statute. I think as a practical matter. I'm sorry, Your Honor? And why don't you think you can read the statute that way? Well, I don't think you can read the statute that way because under state law, none of these items are real property. No case suggested by the appellee or any of these appellees has pointed to a case saying that replacement funds, escrow funds, all of this miscellaneous proceeds, insurance proceeds, are real property under Maryland state law. And secondly, you have to have real property as the only, and they use the word only, security interest to make this work. Now, Congress can come in and amend it. Congress can say, hey, guess what? This is sort of silly. Let's change the word only to included but not limited to they have not done that. The mortgage industry likewise hasn't done it. And the most important thing, Your Honor, is that the statute itself in the amendments they made under 101, 13A and 27B differentiate real property from the items that we're discussing, saying that it can be attached but not necessarily to real property or in the area where real property is generally conveyed. What's the importance of all of this? Well, the importance of all of this is that it gives the debtor an opportunity, if it were not a principal residence that is real property, to come and exercise a well-recognized stripped-down opportunity that the Fourth Circuit has even recognized in the case of Davis and some many decisions out of the U.S. That opportunity has consequences for the creditor, though. The creditor even posts foreclosures, deficiency judgment rights. All those rights would be stripped away. Is that right? They would be stripped away according to documents and the content of documents which the lender exclusively controls. All the lender would have to do is take these items out of any security interest pledge, whether it be at paragraph 2 on the FHA deed of trust or paragraph 5. But the thing is, if there's a hazard, if there's a fire at the house, the mortgage company doesn't want the house back. They want the collateral to be rebuilt and the borrower to continue to pay on the mortgage. So the implications of what you suggest are grave, aren't they? I think they're grave in terms of public policy, but I also think the entity that has to deal with that is either the mortgage industry or Congress. I think the court's sole role is to look at the words, interpret what they mean on their plain meaning, and what do they say? It doesn't equal real property. If it doesn't equal real property, those words should be enforced as they were written by Congress. We have always said, right, that we will construe a statute to avoid a literally absurd result. And I believe you did concede that if we read the statute the way you're reading it, basically every single mortgage out there right now would no longer fall into the mortgage exception. I don't consider that an absurd result. Really? I don't. And if I could explain, I know I have only 30 seconds. Debtors have been avoiding mortgages and stripping down mortgages and stripping off second mortgages for almost 20 years now. That's not absurd. It's done every day in the bankruptcy court. The only reason why this debtor can't strip down this mortgage is because this lender is contending that those little items of personal property equal real property. So I don't consider that, with all due respect, absurd because it's done every day. And there are other reasons for residences. With that, I'll address my remaining argument in rebuttal. Thank you. Thank you. All right. Mr. Tobin. Good morning. May it please the Court. Daniel Tobin here for Appleby PNC Bank, N.A. The issue before the Court has been addressed by a number of district judges in Maryland and a number of bankruptcy judges in Maryland, and they've uniformly reached the same conclusion. We're here on a second appeal, in effect, because Judge Grimm affirmed the decision that bankruptcy judge Lipp entered in favor of PNC Below. We think that all the opinions that you've seen from the courts in Maryland, federal courts in Maryland, reach the right result and so should be affirmed by this Court. The issue is whether the anti-modification provisions in 11 U.S.C. 1322 B.2 apply to this particular Fannie Mae Freddie Mac form deed of trust that governs Maryland mortgage transactions. That deed of trust is, of course, in the record, and it's very clear what property is being conveyed by Mr. Birmingham as the security for PNC's loan. Are there additional security interests set forth in the deed of trust other than the property itself? There are not, Your Honor. There is one item of property that's identified as the property that's being transferred per the deed of trust to PNC and to its trustees to secure the loan. It's on page 3 of 15, and it says, Borrower irrevocably grants and conveys to trustee in trust with power of sale the following described property. And there's an attached legal description and also the address in Beltsville. So that's the property that is the security for this transaction. Well, the counsel says that the assignment of the estro funds is equivalent of a pledge and therefore an additional security interest. What about that? I respectfully, Your Honor, it's simply wrong as a matter of law. Assignment and pledge, you said they're mirror images. They're very different concepts. An assignment is a contractual agreement. A pledge is a conveyance of a property interest. So this instrument, like all form mortgage instruments and deeds of trust, contain not only a conveyance of the property interest but also a number of other rights and obligations of the respective parties. And some of the rights and obligations that are set forth in this particular form deed of trust address insurance proceeds and combination proceeds and escrow items. So all of those are part of the bundle of rights that are delivered by the borrower in order to obtain the mortgage financing that they have applied for. And I think that Mr. Burns made the comment that this is something that the industry, Congress, can address. In fact, Congress has addressed it, not only with the original enactment of the Bankruptcy Code but also with the amendments that were enacted in 2005. And very importantly, the Supreme Court has addressed this particular provision of the Bankruptcy Code in the Nobleman case. Judge Thomas wrote the opinion for the court and described a situation along the lines of what Judge Harris was referring to earlier, that you can look at this statutory provision and grammatically you can read it two different ways. But the way that makes sense is the way that enacts what Congress was obviously intending to do, which was to facilitate the flow of capital into the home lending market. And it would not make sense to adopt a reading of the statute that would eviscerate that purpose by basically making the anti-modification provisions unavailable simply because these other rights that are typically conveyed as part of a mortgage or deed of trust are, in fact, included in that instrument. Well, post-2008, when the whole foreclosure crisis took place, if we adopted the debtors' theory, then there would be a lot of individual homeowners who might still have their homes because they would no longer have deficiency obligations after foreclosure. Is that right? Yeah. The Chapter 13, if it had been written differently and if it had been enforced differently by the courts, there may have been some very different outcomes. But the bankruptcy courts and the district courts in Maryland, I think, did reach the correct conclusion. And, Judge Lee, you did point out that we've seen a lot of interesting decisions out of North Carolina. They seem to go two different ways. There are at least three decisions, the Adams decision, Bynum, and Mullins, all of which addressed the form deed of trust that's before the court in this case. So it only identified real property as a security interest. It didn't say there was additional collateral and personality or anything else. And in those three cases, the judges in North Carolina agreed with the judges in Maryland and said that the cram-downs, the lien stripping, is not available in a Chapter 13 context. Can I ask you a question about sort of the language in the deeds? So I guess how much do we have to decide in this case and how much do you want us to decide? Based on the language of this deed, you're arguing there is no independent security interest, nothing has been pledged as additional security or described as independent collateral. What's the right answer for cases where there is language like that? Your Honor, I think I've got different answers to the have to and the want to. I think the decision that you have to make is whether Judge Grimm got it right in concluding that the only security interest that's conveyed here is real property that is the debtor's principal residence, and therefore lien stripping, cram-down, is not available to this debtor. But we would very much like the Fourth Circuit to take an opportunity to clarify Ennis because we do think that that was a case that reached a sensible result on very unique facts. And I think that the analysis in Ennis has been used by a number of courts in North Carolina in ways that are not consistent with the Bankruptcy Code, as amended in 2005. Very specifically, of course, the cases I'm talking about, Bradshaw and Butner, I think, was the other one. There are several of them. But in any event, they deal with a different deed of trust. The deed of trust actually says that the escrow items required under it are pledged as additional collateral. So there is at least language that indicates that there's additional security being provided to secure the loan. But for those courts to conclude that, therefore, just because that phrase is used in the deed of trust means that cram-down, lien stripping is available, we think is inappropriate in light of the definitions that have been provided for purposes of understanding the Bankruptcy Code, but specifically the definitions of incidental property and debtor's principal residence. So the Ennis case, very interesting. It was a mobile home, and the owners of that mobile home were leasing the real property that it sat on. So there was a certificate of title that was issued by the Virginia Department of Motor Vehicles. It was taxed as personal property. And the deed of trust actually said, you may not affix this to the real property unless we, the lends, say it's okay. So the Fourth Circuit in Ennis said, this isn't real property. This isn't even close to real property. The land is being leased, and we're talking about a vehicle. So under those circumstances, cram-down is available. The anti-modification provisions don't apply because we're not talking about real property. What's happened in these more recent cases out of North Carolina is that the deed of trust that says escrow items are pledged as additional collateral, by using the Ennis analysis, courts have concluded that that's enough to take it out of the anti-modification provisions. And I would suggest, Your Honor, that because escrow items is specifically defined as something that is part of the incidental property that is part of the debtor's principal residence for purposes of the statute, that that's not enough to justify the conclusion that the anti-modification provisions are available. So it's a long-winded answer, Judge Harris, to your question. I think my client and others in the lending industry would very much like clarification on whether Ennis goes as far as these courts have suggested. And we think that given the definitions in the code, specifically at 101.13a of Title XI, which defines debtor's principal residence, and then definition 27b, which defines incidental property to include easements, rights, appurtenances, fixtures, rents, oil or gas rights or profits, water rights, escrow funds, or insurance proceeds. So Congress, in 2005, when it made these amendments, identified escrow funds as something that's simply part of a debtor's principal residence. I think, Judge Lee, you were alluding to the reasoning here that this is just typically part of the bundle of rights and obligations that are being typically conveyed in a mortgage situation. So we would suggest that clarification on that issue would be helpful. And this is a different deed of trust. This deed of trust is a family-made deed of trust. Is that right? Absolutely, Your Honor. Ennis was a FHA deed of trust? Or was it a different deed of trust? It wasn't the same one, I don't think. It was definitely not the same. And in fact, that sort of emphasizes the point that it was personality. It wasn't even a mortgage or deed of trust. It was a security agreement. So it was a sort of a... It was as if you were buying a car on financing and you were just sort of signing a financing agreement. That's all that Ennis involved. There wasn't a mortgage or deed of trust involved at all. And critically, no real property of any kind with the land being leased. Does Maryland law recognize interest in escrow proceeds and insurance proceeds as a separate security interest in a property? Well, I think the answer to that question for the purpose of this case, Your Honor, is that all of the decisions that we see coming out of the Maryland federal courts have analyzed that as a question of federal bankruptcy law. So whether escrow funds are part of incidental property, which is part of the debtor's principal residence, and therefore takes a particular transaction outside of the anti-modification provisions, that's governed by the Bankruptcy Code. So...and I suggest to Your Honors, if you haven't looked at the case of Enri Inglis, which was a decision that came out of the Bankruptcy Court in the Southern District of Indiana and took direct issue with the North Carolina decisions that address the deed of trust that has the language about additional collateral in it, I think that that case contains the analysis that recognizes that, in this context, it's not a state law question because Congress has given us a definition that we need to apply. Unless there are further questions, that's all I have. Thank you. Thank you. Thank you. I'll start where counsel left off, if I may. First of all, the Inglis decision takes the radical view, in my opinion, that there should be a federal definition for certain things when it's convenient to depart for a specific purpose from established state law and the requirements of Butner, the Supreme Court decision, which says you look to defining rights in real property and property of the state under state law. And I think it's a very bad and dangerous decision that goes to the very issue with what we're talking about here, which is a policy issue of infusing the flow of capital rather than reading the statute as it's written. Nobleman, addressed by my colleague, had nothing to do with this issue. There's a footnote, footnote 3. You can't even find it. It's on the last page of the circuit court opinion from the Fifth Circuit, I believe it is. Nobleman was decided. The Supreme Court decision merely said that if a claim is a 506A secured claim, it is not going to be a claim that you can avoid to the extent there's a disparity between the value and the debt because of some antecedent clause at the end of that section which was not recognized by Nobleman. Nobleman never touched on the issue we're dealing with today. I do want to just deal very quickly, Your Honor, with a couple of questions you asked about the FHA versus the Fannie Mae Deeds of Trust. And Hughes and Bradshaw clearly looked to FHA Deeds of Trust. They saw specific language about a pledge as additional security. I'm not aware. I've looked up every case I could find. I can't find a difference between assignment and pledge. In fact, an assignment of rents is a conveyance of rents as security. It's a common term in commercial lending. So I think that that's not a substantive issue. I think the word for the purpose of Deed of Trust, assign versus pledge, really is a distinction without substance. But in the FHA Deeds of Trust, it's found at paragraph 2. It's found at paragraph 11. And, of course, as I've said, it's already to be incorporated to the debt, which means it's assigned for the purpose of allowing the lender to take the money and apply it to the debt, like any other security interest. Your Honor, I do want to also talk to the big social issue, which I think is something that people don't seem to think too much about here when they think about the infusing the flow of capital. If the purpose of this statute was in all cases, section 1322b-2, to make sure capital flows into the mortgage markets, there would be no case law such as Davis v. Brannigan, a great Fourth Circuit case came out about three years ago, recognizing the right of a debtor to strip down a non-residential loan or to strip off wholly unsecured second trust. That would also interfere with the lending industry and would impact lenders. I do think that, Your Honors, in the Grimm decision, Judge Grimm focuses in the district court quite a bit about fixing what the legislature left off or otherwise addressing this from a Hobson's choice again of policy. We, too, want to see what Ennis means. And by policy, Your Honor, I mean what's good for the lending industry as opposed to what does the statute actually say. The Ennis decision, I think, is a very interesting decision because it spends most of its content discussing an issue which isn't really presented. The question in Ennis was two things. Was it a vehicle, a mobile home, real property? And secondly, did section 1322b-2 apply? Ennis went out of its way to go into a lengthy and really brilliant discussion about how you can't change a word out of a statute simply by implying through another section it should be taken out. And a lot of Supreme Court case law support that. So we think the court got Ennis right. We just think the court ought to apply Ennis and allow this debtor, particularly Mr. Birmingham, who, as I said, he works hard as a contractor. He's like every other, you know, Main Street Joe out there trying to make it and has a small house for $200,000 to actually keep his house, exercise the rights of strip-off, which the Fourth Circuit has recognized in other contexts. And with that, Your Honors, I'll be seated unless the court has anything further for me. Gravity is the hallmark of great advocacy. Thank you, Your Honor. Thank you for your argument. I'm trying to learn. Thank you. Have a good day.
judges: Stephanie D. Thacker, Pamela A. Harris, Gerald Bruce Lee